Ejng, J.
The petition in this case was filed January 30, 1897, and application made for the allowance of an alternative writ of mandamus, and the writ allowed. The defendant appeared in court and demurred to the petition, which raises the question whether the petition sets forth a cause of action, and whether the plaintiff is entitled to the relief asked for.
The petition, in substance, shows that the relator is a corporation, having its place of business in Tolédo, engaged in the business of contracting, manufacturing and putting in place heating and ventilating apparatus for public and other buildings; that the defendant is the Board of Education of the City of Toledo, which is a city of the third grade of the first class, and a city school district of the first class. That in 1895 the Board of Education determined to erect a public school building in this city, and thereupon directed certain *17 architects to prepare plans and specifications for the building, which were so prepared and.adopted by the defendant; that the estimated cost of the building exceeded $10,000, and the estimated cost of the heating and ventilating apparatus exceeded $1,500. That thereupon notices were published for a period of four weeks, beginning on December 19, 1896, in newspapers of the city and county, soliciting bids in pursuance of said plans and specifications for two •distinct parts of said building, viz: the heating and ventilating apparatus, and for a closet system to be placed therein, ■and published that said bids would be received up to 12 -o’clock noon of the 11 day of January, 1896; that the notice .provided that the bids must be in accordance with the statutes, and a copy of the notice is attached. The relator sets ■forth that he filed in due form, within the time named in fhe notice, a sealed bid, with a sufficient guaranty, in all respects as required by the notice published and by the statutes, and therein proposed that it would do the work and ■furnish the material and apparatus for heating and ventilating the building, according to the plans and specifications, for the sum of $8,200, of which $6,100 was for material, and •$2,100 for labor; and that it would do the work and furnish the mateiral and apparatus for the closet system for $1,200, ■divided into $1,050 for material and $190 for labor. The prices of labor and of material in both respects were sepa•rately stated. A copy of that bid, together with the proposed contract, 'is attached to the potition, and made a part, thereof.
The relator avers that it was the lowest and best bid submitted, as required by the statute and said notice; that it has in all respects complied svittUthe conditions of the notice ¡and the provisions of the law regulating the matter of making bids. It avers that at the next meeting of the board .after he bids were received, which was held on the 11th day •of January, 1897, the day on which the bids were to be filed *18 with the clerk of the board, they were laid over until the next regular meeting, when they were to be opened and acted upon; and that at the next regular meeting, on January 27, 1897, the board opened and read the bids, and thereupon announced that it did not intend to award the contract for the closet system in connection with the heating and ventilating, as a different arrangement had been decided upon, and that the bids for the closets would not be considered; that it, however, proceeded to consider the bids for heating and ventilating, and upon motion accepted the bid of the Smead Furnace and Foundry Company, and awarded the contract therefor, for the sum of $8,030.
It is further alleged in the petition that the defendant has not yet, but is about to, award the contract to the Smead Furnace and Foundry Company; that it is not the lowest and best bidder for said work; that it did not submit any sealed or written proposition in pursuance of said notice before 12 o’clock at noon of said day, but filed a. pretended bid and guaranty therefor, being the same bid filed by it under a former notice, but rejected by said qoard on or about August 18, 1896, for the heating and ventilating apparatus and for the closet system, and that it did not in said bid state the price for labor and material separately as to either heating and ventilating apparatus and closet system, but put in a^lump bid therefor, and made no bid therefor according to the plans and specifications, nor according to law. And^it sets^forth a copy of the Smead bid and guaranty, and'makes them a part of its petition, and claims that they are not lower than the relator’s bid, nor as low. It further alleges that because the labor and material is not so separately stated for the heating and ventilating apparatus, the exact price thereof cannot be ascertained from the bid.
It avers that it is ready and willing to enter into a contract and perform it, according to law, according to its bid, and according to the plans and specifications which have *19 been adopted by tbe school board; and also that it has demanded of the board that it should award the'contract to the relator. It avers that unless restrained by the order of this court, said Board of Education will award the contract to the Smead Furnace and Foundry Company, and plaintiff will be without any remedy. It therefore asks that a writ of mandamus may issue against the Board of Education, commanding it to award said contract to the relator, and to duly execute the same; and also asks for an injunction, etc.
Of course, the real relief asked for in this petition is the awarding of a writ of mandamus to compel the Board of Education to let the contract to the relator; and in order to avail it to occupy that position, it must show that it is the one under tbe law with whom the board should enter into the contract; and that regardless of anybody else’s rights. It cannot, as has been before held, rely upon the weakness, or informality, or irregularity of the bids or of the proposed action of the school board with reference to anybody else. The Smead Furnace and Foundry Company is not a party to this action, and its rights cannot be adjudicated nor determined, except in so far as it is found that the plaintiff has the only right to have this contract awarded to it. That, in substance, is the way in which the law stands with reference to writs of mandamus.
According to the allegations of this petition the Board of Education was about to construct a school building, and as one of the incidents of the building, it saw fit, independent of any action upon its part, as to the letting of the contract for the building, to advertise separately for bids for heating and ventilating apparatus. So far as the closet system is concerned, as included in their notice, it is not material in this controversy at all, since it is averred in the petition that fhe Board of Education decided that it would not accept any bids upon that, but would let that go over and advertise that separately, which it had an undoubted right to do. *20 This proceeding, therefore, has to do only with the advertising of bids for heating and ventilating apparatus. The notice sets forth that the bids must be in accordance with, plans and specifications on file at various points in the city, where they may be examined by those desiring to bid.
The construction which I think it is fair to place on that from the allegations of the petition, is that there are the-plans and specifications of the building, including the size and extent of it, the number of rooms that are to be heated, but does not undertake to set forth that the Board of Education has agreed upon plans and specifications for a heating: and ventilating apparatus. They simply left that question open, so that anybody that had a heating and ventilating' apparatus, from a gas stove up to the most complex and complicated system that might be or is devised, would have' the right, under that advertisement, to bid.
It is averred — and a good deal of stress is placed uponjpt ■ — that the Board of Education is about to let a contract to' somebody who has not complied with the law. That would not be a reason why the plaintiff should have this contract. That would not furnish any reason whatever why the court should issue an order to make a contract with the plaintiff. It must be found that the plaintiff is the only one, under this notice, who is entitled to it; that he is able, ready and willing and clearly entitled to this contract, before the writ can issue. But it was argued that the bid of the person-with whom the Board of Education was about to make a¡ contract, was informal, and irregular, and the irregulartiy upon which the most stress is placed is that the bid of the Smead Company does not separately state the work and labor. And as we áre told that the statute, section 3988, which most explicitely defines the duties of a Board ofjEducation in this respect, requires that to be done. The language-is as follows:
“When both labor and materials are embraced in the- *21 work bid for, each must be separately stated in the bid, with the price thereof. None but the lowest responsible bid shall be accepted; but the board may, in its discretion, reject all the bids, or accept any bid for both labor and material which is the lowest in the aggregate for .such improvement or repairs. Any part of a bid which is lower than the same part of any other bid shall be accepted, whether the residue of the bid is higher or not; and if it is higher, such residue shall be rejected. ”•
In connection with that statute, there is another which we think has some application, and that is section 794, which provides:
“When any board of commissioners, board of trustees, officers, or board of directors of the state, or of any county, township, city, town, village, school or road district of the state, or of any public institution belonging to the same, * * repair, alteration, of any * * school house or any other public building or improvement, and who are now or hereafter may be required by law to advertise for and receive proposals for the furnishing of materials and doing the work necessary for the erection of the same, such officer, board, or other authority, shall require separate and distinct proposals to be made for furnishing the materials or doing the work, or both, in their or his discretion, for each separate and distinct trade or kind of mechanical labor, employment or business necessary to be used in making such public improvement; and in no such case where more than one such trade or kind of mechanical labor, employment or business is required to furnish the materials for, and do any such work, shall any contract for the whole of the job, or any greater portion thereof than is embraced in one trade or kind of mechanical labor, employment or business, be awarded by any such officer, board or authority, unless the separate bids do not cover all the work and materials required.”
There is a considerable more in this section which it is not material to read.
The advertisement as alleged in the petition which calls for these bids,calls simply for heating and ventilating apparatus *22 and closet system for school-house. The bids which the petition alleges were put in by the plaintiff, which it alleges the plaintiff is entitled to have accepted,show that it proposd “to furnish all of the material and perform all of the labor necessary, for properly installing the heating and ventilating apparatus, (as provided in the duplicate contracts herewith submitted), for the new central or high school building, according to plans and specifications prepared by the architect for the following amounts;” and also”to furnish all of the material and perform all of the labor necessary for properly installing a dry or flushing closet system ror the following amounts. ’ ’ It then furnishes a bond that it will enter into a contract and give proper security for its performance; also, it sets forth duplicate contracts which it has prepared for the board of education to execute or sign with it in which is set forth more particularly the kind of material and apparatus that it proposes to furnish. Those are described at considerable length. The apparatus is known in these contracts and in the exhibits as “The Bryce Heating and Ventilating Apparatus. ’ 'And it says that the heating and ventilating system provided in the contract is the fan-blast system, which provides for “heating the following rooms by warm air;” and described all the rooms in the building, including the basement. A perusal of that' is sufficient to indicate that this is a system of which this corporation owns the right,although nothing is said about patents. It is a system which it proposes to put into the building for heating and ventilating those various rooms. And from the description given in the bid of the Smead Co., and from the allegations of the petition, it is plain enough that it is also a system which it devises and of which it is the proprietor.
It is clear to the most casual observer that this is an altogether different form of apparatus from articles like furniture or any other loose articles, as the old-fashioned methods of warming by stoves, where one would go into any factory, or *23 shop, or store engaged in that class of business, and pick out, and then buy it at a given price; but that it is to be put into the building by the contractor, and put in working order, and agents of the school board instructed in its management and use. All those elements enter into the particular system which they have bid to put into the school building. To say that you can separate the labor and material, in our judgment, is idle. You might exactly as well say that, in order to conform to the laws of Ohio, it was necessary to separate the cost of the raw material contained in the pieces in the furnace which they propose to supply,from the labor used in its construction, as to say that you must separate the completed article from the the labor and cost of setting it up. One is as much a part of the furnace as the other is. It is not a furnace until it is in operation; it is not a ventilating apparatus until it is in the building in operation. So we are clearly of the opinion that no necessity could exist for separately stating the labor and material in any of these bids. They bid for a heating and ventilating apparatus, and that could just as well be in a lump as in any other way to comply with this statute, since that comes within the clear statement of sec. 79á, that it isa part of a mechanical trade necessary to be used in a public improvement. It is a part of a system which all goes together. You cannot put in the furnace without putting in the heating and ventilating apparatus. One is a part of the other. They propose to do the whole thing, and put it in operation, for so much money. According to its petition, plaintiff proposes to do it for $8200; it alleges that the other company prop oses to do it for $8030. That certainly would not allow this relator a writ of mandamus upon the single ground that it is the lowest bidder.
But in addition to that, it is alleged that the other party was not a bidder at all. It appears from the petition that the bid was put in at some time, but that it was not acted *24 upon, or was rejected. Enough appears in the petition to show that it remained there. While that argument would have some force under certain circumstances, we do not believe that in an action for mandamus it can enter into a consideration of the right of the plaintiff to have its writ; for the plaintiff must rely upon the strength of its own right and not on the weakness of its adversary. A case in 42 Ohio St. is undoubted authority that a good many things may be waived by the board or officer that enter into a contract of this kind. That would not be entirely true in an action for injunction, but it is true in an action for a writ of mandamus. They cannot claim to have the right to have this contract awarded to them because some bid has been irregular or informal.
But it does not occur to us that there is any serious informality in this bid. It is not alleged that this bid was an open bid,and that other people could see it. Had it been so alleged; it could not have been prejudicial to the plaintiff.
It would have been information to it as to exactly what bid had been made,upon which it might have acted in making its own bid, and thereby have given it an advantage. It does not occur to us that the plaintiff has a right to complain if it had been in their office two months or six months, or if it was put in at the end of the notice published in December. We have had occasion before to say in matters of this kind, and further reflection only strengthens our opinion upon it, that this suit has not yet been so framed as that the discretion which the law has given to those boards can be controlled, either by a writ of mandamus or by an injunction, when it comes to the question of selecting any apparatus that is in the control of a single individual or a single company or firm. The board, it seems to us, acted exactly right in advertising as they did advertise for bids, without any mention in the notice as to the kind of system they were going finally to adopt. They gave those interested in that question *25 an oppotrunity to bid on any kind of an apparatus the individual or company owned,and to name a price to the board. The natural tendency of that kind of a notice would be to make the prices so given, as low in amount as possible.
But after all, the board is not required to finally adopt a system whose owner has bid a sum lower for putting it into a public building than the owner of some other system. It can leave the question of determining finally, what system it will adopt, for consideration after all the bids are in. The question of price, manifestly, might have some influence with the board of education in determining which one it would accept, if all of them, or two, or three of them are substantially equal in merit; but it would not be binding on the board to accept one because it was the lowest bid, although they might consider it. It still has the right which the law has given it, to reserve the determination of the particular system it will adopt, until after the bids are opened, especially where these systems are largely covered with patents; and we fail to see any'way in which the law controls that discretion in the board of education.
It is clear that these bids are not competitive bids in any sense of the word. To make them competitive, it must be averred that these systems are exactly alike and equally good. No averment of that kind is contained in the petition. They must have been so similar that when a party bid upon them he was bidding upon exactly the same basis as his competitor, as in ordering structures made of brick and stone and wood, where all contractors have an even chance to determine whether they will bid, and estimating the cost in the market of the things to be bid upon. But for these things controlled by patents,the market is not free and open. It is controlled by a single owner. We know of no way in which the law can regulate that. We do not believe that you can control the discretion of the board of education to adopt the system after the bids are in, nor do we think it would he *26 wise to do it. So long as it is the privilege of the inventor to secure from the United States government the right to his own inventions, and so long as the law protects him in that right, we see no object in saying, that because some other person has a different patent the owner of which bids a lower sum than the owner of this one, that the discretion of the board to adopt one or the other should be controlled, nor do we think it can be.
For these reasons, either of which would be sufficient, we think this petition must be dismissed and the writ disallowed.